Thank you. Good morning, and may it please the Court. My name is Susan Oxford, and I represent the Equal Employment Opportunity Commission as appellant in this matter. I would like to reserve five minutes of my time for rebuttal. This case presents important questions concerning the grant of a new trial and the obligations of an employer under Title VII to reasonably accommodate a religious conflict. But I'd like to start by emphasizing what issues are and are not before this Court. This is not an appeal from a grant of a new trial, and this is not an appeal from a denial of a new trial. The only issue before this Court is whether Judge Martone abused his discretion when he granted reconsideration and vacated the new trial order of the judge who presided over the trial and heard the witness testimony firsthand. A trial judge does not simply have the authority to grant a new trial. The judge has the duty, after presiding over a trial, to weigh the trial evidence and set aside a jury's verdict, even a verdict that is supported by substantial evidence, if in the Court's conscientious opinion the Court believes the verdict is contrary to the clear weight of the evidence. And Judge Carroll said that he believed that the jury's verdict here was contrary to the clear weight of the evidence. And the jury reached only one issue in this case, and that is the jury concluded that Serrano's had provided a reasonable accommodation that would eliminate the conflict between Taranayev's sincere religious beliefs and Serrano's management code of conduct. That was the only fact-finding, but they also entered a judgment of a verdict of not guilty, didn't they? They entered a general verdict after they made the fact-finding. That's correct. But it was based on the fact. It's not correct to say there was only one determination. True. They did. They entered a verdict for Serrano's. But they did not base it on a finding that EEOC failed to establish a prima facie case because they skipped over that question. And they did not base it on the finding that any accommodation would have caused Serrano's an undue hardship, which was another one of the special interrogatories that the jury was presented with. And they did not reach that question because they did not need to correct. They ruled on a single ground, which, if supported by the record evidence, would have justified a verdict in Serrano's favor. Judge Carroll, who presided over the trial, had the opportunity to gauge the evidence firsthand, and not only to assess how many witnesses testified in favor of one fact versus another, but also the manner in which they testified and whether or not these witnesses appeared to be credible. This is an extremely important issue in this particular case, and I'll explain why. But first let me remind the Court what this Court has noted itself several times. First of all, any weighing of the evidence after a jury trial necessarily presumes familiarity with the entire record. And this Court said in Wallace v. San Diego just last year that when it reviews a new trial order, it conducts a careful review of the record. Counsel, the core issue is whether a reasonable accommodation was offered. Isn't that correct? That's correct. So what you need to do is lay out the evidence on each side, and if there was substantial evidence that it was not, a reasonable accommodation was not offered, I would agree with you. But I think you have to look very carefully as to what the testimony was, and that's what I want to hear from you. I'm glad you asked that question. There were three accommodations that Serrano said it offered. Two of them plainly did not eliminate the conflict. And it's important to start by acknowledging what was the religious belief that was at issue here, and that is Tara Nayeb believed that she was called by God to lead a Bible study for anyone who chose to attend. Three employees who worked at her restaurant who had on their own decided to attend her church signed up for her Bible study and began attending. So she said she didn't need them there in order to fulfill her religious beliefs, but she could not order them to leave the Bible study. She could not bar them from the Bible study, and she did not believe that she herself could stop teaching the Bible study. So given that that was her religious belief, and that was the court's instructions to the jury, which are not challenged here on appeal, the accommodation would have to enable her to continue teaching her Bible study without barring anyone from attending who chose to attend. So Serrano's first two options that they offered were that Tara Nayeb would instruct the employees to immediately stop attending her Bible study. And the second one they offered was that she would transition them over time, Serrano said, which was between a month and maybe two months, a period of time where they could attend her Bible study, at which point she would then require them to attend a different Bible study, bar them from her Bible study. Both of those plainly continue the conflict with her religious beliefs, so they don't constitute accommodations. Serrano's then identifies that it made an offer to transfer her to another location. And the EEOC concedes that a transfer, if a transfer was offered with no strings attached, then that would be an adequate accommodation because then Tara Nayeb could continue teaching her Bible study, and the individuals could continue, the employees could continue attending the Bible study. On that critical point, was a transfer offered and was it offered with no strings attached, the evidence is highly in dispute, but there is no substantial evidence to support that a no-strings-attached transfer was offered. There, from our reading. You really have to be showing that no reasonable juror could have thought that this had been offered without strings attached. That's the standard, I think. My understanding of the standard this Court has articulated for the grant of a new trial is the judge is convinced that the jury has reached, has made an error. And if we look at the evidence on transfer, we have Rick Serrano's bald and unsupported statement that I made her an offer of transfer on July 2nd and there were no strings attached. He then claims that Tara Nayeb rejected that offer. And when asked to explain in what way or what was the conversation in which she rejected the offer, Rick Serrano says one thing, and that is Nayeb said she could not guarantee that the same thing wouldn't happen again at another location. When Rick Serrano's sister Teresa is asked about the transfer offer, and she only knew this secondhand from what Rick Serrano told her had happened, she said, Rick told me that he offered a transfer, but when Tara said she couldn't guarantee that the same thing wouldn't happen in another location, transfer became no longer an option. When Tara Neff was asked about the transfer option, she says something a little different. She says transfer was discussed as a possibility, that Rick Serrano said we might be able to transfer, we could transfer you, but I need to talk to the family first. And remember, this is a family-run business. I need to talk to the family first and get back to you. And the next time the conversation came up, Tara Neff says that Rick and Teresa Serrano asked her, can you guarantee this won't happen again at a new location? And she said, how could I guarantee that? That would not be within my control. And I'd be happy to go over the evidence for the court. Sotomayor That seems, when you say that he made the bold statement of X, and I'd say, well, and she made the bold statement of Y. You know, I mean, that's the kind of this equipoise other than the sister providing some corroboration and all of them being subject to impeachment and the jury could take a look at it. So it's hard to see under the clear error standard how you get out of this evidentiary box. And let me explain that. When Rick Serrano says, I offer to transfer with no strings attached, that's what I'm calling his bold statement. But then when he asks, how did she reject it, the evidence of all the witnesses at that point is clear and consistent. Every witness says that the offer of transfer, if it was ever made, was rejected by the words Taranaev saying, I can't guarantee this won't happen at a new location. That that was the ‑‑ she never ‑‑ Rick and Teresa Serrano never say anywhere in their testimony that Taranaev said, I won't go, I refuse a transfer, I don't want to be transferred. She never rejected a transfer except for she uttered the words, I can't guarantee this wouldn't happen at a new location. She was happy to go and she testified to the jury that she would have accepted a transfer gladly. Rick and Teresa said to her, and they repeated this testimony at trial, they said to her, what would be the point of a transfer if this might happen again at a new location? And transfer came off the table because of that. So what I'm ‑‑ my point is that the only thing that supports that this was a statement at trial, I offered a transfer with no strings attached. I offered an unconditional transfer. But then when asked to explain it, Rick Serrano himself admits that the reason he believes Taranaev rejected the transfer is solely because she said I can't guarantee that won't happen in a new location. She rejected it, though. She did not reject it. No. She did not reject it. And let me be very clear on that point. Taranaev never rejected a transfer. Now, did she say, yes, I will transfer? She never uttered those words to Rick Serrano, and she explains in her testimony that's because he never, ever asked her a question that required a yes or no answer. What he said to her is, we could transfer you. Transfer is a possibility. I have to go back and talk to the family. And so then when he came back after ‑‑ Could a jury have pondered this and said, well, isn't it odd that she would lose her position rather than to take a transfer? Could a jury, in its thinking about the question and weighing the evidence, have asked itself the question of why she would give up her job, because she wanted to add this twist to it, if you will. I won't say guarantee. I'll just say a little twist. She didn't reject a transfer, and she wouldn't have given up her job rather than transfer. The point is that that's a gloss on the evidence on her testimony. And I think what Judge Hart is saying, the jury had what it had, and it puts its own gloss and interpretation. It gives some credibility here and there. We don't know exactly how that was assigned, but we know how they came out. And there's a logical way they could have come out that way, given the testimony. Yes. And I submit that's why Judge Carroll did not grant judgment as a matter of law. If there was only one conclusion the jury could have reached from that dialogue, we would have been warranted judgment as a matter of law. If they could only have concluded ‑‑ well, I would submit they could only conclude that she ‑‑ You see, that's what ‑‑ Right. The jury could ‑‑ There's not just one conclusion, but there's certainly a reasonable conclusion that they concluded that she was accommodated and, therefore, that Serrano's testimony was not liable. No. There's not a reasonable conclusion that she was accommodated. That's what it comes down to, is that you're saying that on this evidence it's not reasonable to make that conclusion. Okay. And that's where it is so critical that the individual who made this determination is the trial judge who heard the testimony, because I have not even mentioned to the Court yet that Rick Serrano himself contradicted that entire dialogue about the transfer and was it actually offered, and then did ‑‑ was it Taranayev who rejected it? Some trouble just focusing on the original trial judge, because often we're required whether a second judge looking at a motion for reconsideration or an appellate court is required to look at a transcript and to determine whether it meets various criteria. And we weren't there at the trial. That's exactly right. We were not there at the trial. But under your ‑‑ under your rule, you would never have a legitimate review after the fact by somebody who wasn't at the trial. No. Review for errors. Review for errors, but not review for second-guessing the judgment of the presiding judge who heard the witnesses firsthand. Well, what's your best authority for that? The Supreme Court in Globe Liquor v. San Roman said the judge who saw and heard the witnesses has the feel of the case which no appellate printed transcript can impart. This Court has reflected the same general sentiment. Right. But that sentiment does not mean that there's an abdication to that original judge, does it? There's ‑‑ the original ‑‑ the original judge has the better sense, the only better ability to actually assess the demeanor of the witnesses as they delivered their testimony and determine whether or not the testimony is credible. And that is extremely critical here on this issue of transfer because the EEOC submitted into evidence and the jury heard and the presiding judge heard Rick Serrano's two prior inconsistent statements. One was a tape-recorded statement of an interview by an EEOC investigator who put Mr. Serrano under oath, had him take an oath of honesty and recorded his statements in which he said, we talked about the possibility of a transfer, but I told her that I have to go back and talk to the family before we could decide whether that was a possibility, whether that was truly an option. That was his statement under oath before an EEOC investigator. A few months later, Serrano submitted a sworn declaration also signed by Rick Serrano, which was submitted into the evidence and read to the jury, where he said the same thing, that we talked about the possibility of a transfer, but it wasn't actually offered. Against that, Judge Carroll had a chance to hear Rick Serrano on the witness stand say I made an unconditional offer of a transfer and to assess his demeanor as he delivered that unsurprising statement. Let me, since your time is running, indulge me with this. As I read through this case, I'm puzzled by the action of the plaintiff here, or not the plaintiff, but the complaining party, that she would not go back later on and say, look, I don't want to be out of work. I want a job. Why wouldn't she take a transfer and take a risk? It seems like a light risk that somebody in another restaurant would come in and want to join her Bible class. I am very puzzled about why I'm not communicating this to the Court, and I apologize. She would have taken the transfer. She never said no. She was happy to go. Rick Serrano intrigued somebody, pulled it off the table. They took it off the table. They took it off the table. She would have transferred. She was happy to go. I'm sure she thought it was a small risk. And I'm not sure why somebody would say that. Does the testimony say that? The testimony is just what I've told you. Exactly. So all this stuff you're saying is not evidence. Well, no. It's your gloss on the evidence. No. Rick and Teresa Serrano say they pulled the option off the table, and she says they pulled it off the table after I said I can't guarantee. She never said I won't transfer. She would have transferred. Let's go back and look at the transcript. Your time has well expired. Thank you. Thank you. Morning, Your Honors. Kristen Culberson and Mark Ogden from Littler Mendelson and Phoenix on behalf of the Serranos. First, I'd just like to clarify what it is that the EEOC just raised this, what it is exactly that the jury answered. The second interrogatory reads, Has Serrano's proven by preponderance of the evidence that it offered Ms. Nave an accommodation which would have eliminated any conflict between the practice of her sincerely held religious belief and the management code of conduct? The answer, yes, to that question. And as instructed by the Court, they moved to the general verdict form and entered a verdict in favor of the Serranos and moved on. There are two issues before this Court. First, whether the district court used its discretion by reconsidering its order, which granted a new trial. Could I interrupt you to ask my question again? Yes, Your Honor.  I think that there is conflicting testimony in that regard, Your Honor. The, the, when the Serranos made the offer to her, it would have, the Serrano family, this is a family-run business. They have about, I think they have nine Mexican food restaurants in the Phoenix area. The offer to her was to transfer her to another one of the stores. It would have been the same hours, the same duties, the same responsibilities, the same benefits, everything. As a matter of fact, the store that they were considering transferring her to was actually closer to her home. So in their view. This is all in the record? Yes. We'll find this in the record? Yes. And this, Your Honor, would have been, in the Serranos' view, the perfect accommodation because it would have allowed them to keep Ms. Nave as a general manager and it would have allowed her to continue. But is there evidence in the record that they took it off the table? The no, there is conflicting testimony. The Serranos testified that when they made the offer of a transfer to Ms. Nave, she and Ms. Nave testified in this regard. She consulted with the pastor of her evangelical church and then went back to the Serranos and said, I have discussed this, the offer of a transfer with my pastor, and I cannot guarantee to you that the same thing will not happen again at the new restaurant. The Serranos interpreted that as a rejection of their offer. And so it's true what the EEOC says, that Ms. Nave never said the exact words, that I reject your offer. She also never said, I accept your offer. The Serranos interpreted that to mean that this was going to be an ongoing problem no matter what they did. The EEOC also interjects that there is testimony where they say, well, we have to go talk to the family, which raises the question of whether there really was an offer on the table. How does that testimony fit in? Well, the EEOC, the EEOC investigator interviewed Rick Serrano on the record. We submitted a declaration on behalf of Rick Serrano, both the tape of him being his testimony were submitted to the jury. And the best case scenario in all of this is that there was conflicting testimony between Ms. Nave and the Serrano family members. Regarding the ---- Tell me, counsel, in the time sequence, when did they say they had to go back to the family? How did the negotiations stand when that happened? It was very early on. The ---- Rick Serrano had a conversation with Ms. Nave and said, we are going to ---- we propose a transfer, we propose that the employees move to another Bible study and everybody stays at the same restaurant, or we give you perhaps a month or two to transition the employees to another Bible study. But Rick Serrano testified unequivocally, and this was the language that he used, that he made her an offer with no strings attached. The condition of her not engaging in this conduct or having Bible study members who were her direct report subordinates at the next restaurant was solely from her. She testified ---- So when he made her the offer and she went back to talk to the pastor, there were no strings attached to his offer. That's correct. Transfer. And that's in the record. Is that right? Yes, it is. And where in relation to that conversation did the conversation come, or his testimony that he needed to go back to the family? I think it was all in the same conversation. And so, but she interpreted it. It was an offer. The EEOC tries to redefine, in our view, redefine the English language by the distinction between the word proposed and the word offer. Rick Serrano said that he proposed this transfer to another restaurant. The EEOC says, well, that's not enough, because he didn't actually use the legal language of saying, we offer you a transfer. I mean, these are not lawyers. These are ordinary people trying to solve a problem. In fact, I mean, these are deeply religious people who are trying to solve a problem with the bare minimum of interaction or interference with the religious beliefs of one of their employees. They, the transfer to another restaurant would have resolved everything. And Ms. Knave considered the transfer, she unquestionably considered it to be an offer because she discussed it with her pastor and then went back to Rick Serrano and said, I can't guarantee. I've discussed this with my pastor. I've discussed, even her notes say that she has the opportunity of transfer or termination. That's what she wrote in her own notes. That was in the record. The jury saw that. And that's in the record? It is. In her notes? It is, Your Honor. The EEOC makes, in their brief, makes considerable comment about the fact that Judge Martone, supposedly the second judge for the district court who overruled the first judge and reinstated the jury's verdict, used the improper standard. Regarding the standard of review of Judge Carroll, Judge Carroll's order by Judge Martone, Judge Martone applied Rule 54b, which states that any rule, any order can be reconsidered by a court as long as there's no final judgment that had been entered. And that's exactly what happened in this case. When Judge Carroll granted the EEOC's motion for a new trial, he vacated the jury's order or the judgment that had already been entered by the court after the jury's verdict. And so when Judge Martone reconsidered Judge Carroll's order, there was no final judgment in this case. And so Judge Martone properly applied the standard under Rule 54b, and he applied the new trial standard, citing the case that he cited in his order, the case that the EEOC cites over and over again that's the proper standard for a new trial, which is the clear weight of the evidence. And this Court has specifically held that when one judge enters an order in a case, reassignment to a second judge does not deprive the second judge of the ability to consider or revise an order of the first judge. And that's the United States v. Desert Goldmine case. They – the EEOC argues that Judge Martone applied the incorrect standard when ruling on Serrano's reconsideration motion because he said he was not persuaded that the EEOC would only support a finding that an offer was not made, end quote. In the EEOC's opening brief at page 29, they correctly refer to that sentence as a comment, quote, unquote. The EEOC, again, cites Landis Construction Company v. Royal Bank of Canada, and Judge Martone cited the same case. He said the existence of substantial evidence does not, however, prevent the court from granting a new trial under Rule 59 if the verdict is against the clear weight of the evidence. That's the standard. And Judge Martone went on in the same order. This was the original order that granted Serrano's motion for reconsideration. He cited the clear weight of the evidence standard four more times, for a total of five times in an 11-page order. Then, when the EEOC filed a motion for reconsideration, Judge Martone cited against the clear weight of the evidence standard five times in a six-page order. There's no question that Judge Martone used the proper standard in this case. Regarding the EEOC's contention that this Court should defer to Judge Carroll because he's the one who sat through the evidence, you know, the Serrano's, based on what Judge Carroll did, the Serrano's were stuck in sort of a legal groundhog day. They were going to have to try this case over and over and over again until they finally lost, and then, and only then, would they be able to appeal the first order that Judge Carroll entered granting a new trial. And because Judge Carroll's order just gave the one-sentence explanation that the jury's verdict is against the clear weight of the evidence, there's no reason to think that he wouldn't have done the same thing over and over and over again. And we would have to try this case repeatedly until we finally lost, and then we could appeal to this Court on the Court's original grant of a new trial order. That's why we – the Serrano's wanted any judge, any other judge, to take a look at this record and to take a look at this case. And that's why we took the unusual step of asking this Court in a 1292b petition to step in and review the record and assist the lower court with this case. And so – and so we asked Judge Carroll to certify it for this Court, and Judge Carroll said, okay, yes, I do certify it. Then the Ninth Circuit came back to him and said, well, are you certifying both issues? The one issue was that allegedly the jury interrogatories were inconsistent with the verdict form, and the second one was the standard that Judge Carroll cited that was against the clear weight of the evidence. And Judge Carroll said, no, I'm only certifying the second issue. And so the Ninth Circuit, properly in our view, said, well, this isn't going to resolve anything. And so the Ninth Circuit sent it back to Judge Carroll, and so there we were, stuck again. And then right before we were supposed to try the case a second time, Judge Carroll, again without explanation, recused himself from the case. He called me and the regional attorney and said, I'm recusing myself from any further involvement in this case. And that was it. And so we got the case assigned to Judge Martone. It would have been ‑‑ it was a pure serendipity for us that it was assigned to another judge, but it wouldn't have mattered who it was. We wanted any other judge to take a look at this record and take a look at this case and review what Judge Carroll had did, because, as I said previously, the best case scenario for the EEOC in this case is that there was conflicting testimony, and the jury did their best to resolve it in favor of the Serrano's in this case. The other thing that the EEOC spends ‑‑ Kennedy, do you attach any significance to the fact that the jury could not reach a decision on Interrogatory No. 1? I do not, Your Honor, because ‑‑ because Jury Interrogatory No. 1 says, has the EEOC proven by a preponderance of the evidence that Ms. Nave held a sincere religious belief that required her to lead a Bible study class for anyone who chose to enroll, and that she informed the Serrano's of this belief. First of all, that's the wrong standard. And despite the fact that we showed Judge Carroll four different Ninth Circuit cases that held the proper standard, we're not here to fight about that. You didn't propose those interrogatories. We did propose those. You did? But Judge Carroll rejected them. And what this interrogatory is supposed to say, the end of it, is supposed to say that she had a sincere religious belief that conflicts with the workplace definition. Why did you need any interrogatories? I'm sorry? Why did you need any interrogatories? Well, it's been my experience. This was my ‑‑ I think this was my 21st jury trial to verdict. It's been my experience that if you're trying to unwind it at the end and figure out what it is that the jury was doing, especially with respect to damages, it's easier to do it with interrogatories. My experience is quite the contrary. There are several court judges in Arizona who have precisely the same perspective, Your Honor. But to answer the Court's question, the first question, whether she had a sincere religious belief, is completely subsumed in the second question. It assumes that the answer is affirmative. As the lower court judge said, like the rest of us, you pass an issue if you can avoid it, and the jury just probably didn't know exactly how sincere or insincere she was and went on to ask the next question, which, did they accommodate whatever her belief was? I agree, Your Honor. In that context, there's no conflict between the interrogatory and the final verdict. Is there? No. And that perspective, Your Honor, is supported by the length of time that the jury was out. They were out for, I think it was either 59 or 60 minutes, and they probably spent about half of that time eating the court's donuts. My experience over the years doesn't tell me that it doesn't prove anything, sir. I wanted to touch on one final point, and that is regarding Judge Martone's reference to the possibility that Ms. Nave was engaging in proselytizing in the workplace. And I want to clarify that there is no admissible evidence in the record that she was doing that. And Judge Carroll, I mean, Judge Martone, refers to it as an issue because that's the way the parties were so familiar with this at this point, we failed to make it clear. But he referred to it as an issue, and then said, and then added a paragraph and said, to the extent that this issue is her proselytizing in the workplace, the Ninth Circuit has been very clear that employers can restrict this type of conduct. But I want to make it clear for this court that even though that might have been suspected by the Serrano's, there is no evidence in the record that that actually happened. And there is no evidence that she gave a statement that she was going to do that at the next restaurant. Thank you. Thank you. You can have a minute for rebuttal. I would just like to ask the Court to look carefully at the record sites that we cite on page 8, footnote 2 of our opening brief, where we review the conflicting transfer evidence and point out that one portion of that is Rick Serrano's prior audio taped statement to the EEOC, which Judge Carroll was able to view and assess along with his other statements that he made before the jury, which Judge Martone was not able to review, obviously, because the tape, I'm told, was not actually put into evidence. It was just played for the jury and the judge. In Johnson v. Paradise Valley School District, this Court ---- Excuse me. Why didn't they put it in evidence? Because they had played it and it was not ---- I don't know the answer to that. It's not good practice. I don't know. If you don't make an appellate record, you have trouble. Right. And I had assumed that the court reporter would transcribe the statements as they were made. I don't think so. But that's the difference between a transcript and a tape. But this Court has no audio record of any of the witnesses who testified before the Court. So in that sense, this is completely the same as all the other witnesses. The ---- In Paradise Valley, this Court said that normally you are quite deferential to the district court in these matters of granting a new trial. But the question might be different where, as in Johnson v. Paradise Valley, the district judge who provided ---- who granted the new trial motion did not preside over the jury trial. And the Court goes over the reasons for that because the ---- If the lawyers below don't make the record for the court of appeals, I don't see how you can argue in the court of appeals that the absence of that record is somehow of value to you. The transcribed statement is in the record. The transcription of his statements. And I do apologize to the Court that the court reporter didn't transcribe it directly. In criminal cases, we put in both, the oral and the written, so that the reviewing court can see and hear what we heard below. I understand. But my ---- the point I really want to emphasize is that all of the witnesses, Rick Serrano and every other witness that testified, the jury and the judge, Carol, was able to assess their credibility based on viewing the demeanor in which they delivered their testimony, something that ---- Thank you. We have your point in mind. We've given you quite a bit of extra time. Thank you. The case just argued, EEOC v. Serrano, is now submitted. Thank both counsel for your argument this morning.
judges: Fletcher, McKeown, Hart